UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER K. FREI,

       Plaintiff,

     v.

TOWN OF HOLLAND, JAMES
WETTLAUFER, CHRISTIAN PETERSEN,
LYNN ARNOLD, and TANI SAPIRSTEIN,

       Defendants.

Civil Action No. 18-30187-MGM

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTIONS TO DISMISS
(Dkt. Nos. 29, 31)

July 23, 2020

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Plaintiff, Peter K. Frei, brought this action pro se against Defendants Town of Holland, James Wettlaufer, Christian Petersen, Lynn Arnold, and Tani Sapirstein asserting claims of First Amendment retaliation under 42 U.S.C. § 1983 (Count I), civil conspiracy under state law (Count II), abuse of process under 42 U.S.C. § 1983 (Count III), equal protection violations under 42 U.S.C. § 1983 (Count IV), and conspiracy to interfere with civil rights under 42 U.S.C. § 1985 (Count V).

Defendant Sapirstein moved to dismiss all of Plaintiff's claims against her (Dkt. No. 29), as did Defendants Wettlaufer, Petersen, Arnold, and the Town (Dkt. No. 31). For the reasons below, Defendants' motions are granted as to all of Plaintiff's claims except for the state law claim of civil conspiracy. Having disposed of all federal claims, the court also dismisses the state law claim, without prejudice, because it declines to exercise supplemental jurisdiction.

II. Background

The court accepts as true the facts as alleged by Plaintiff in his complaint for the purposes of deciding the motion to dismiss. (Am. Compl., Dkt. No. 24.) Plaintiff Frei is a resident of Holland, Massachusetts, having purchased a 5.5 acre private peninsula on the Hamilton Reservoir. The property appears to have been a source of significant friction between Plaintiff and Town officials, resulting in several lawsuits and eventually a reprimand from the State Ethics Commission.

Plaintiff asserts that, after buying the property, his efforts to improve it met with resistance. In 2002, Frei submitted an Approval Not Required ("ANR") plan to the Town. According to Plaintiff, the plan showed the required frontage and acreage for each parcel so that the Planning Board was required to endorse it as a ministerial matter. Without the endorsement, Plaintiff could not record the plan and sell parcels of the property, something he wanted to do to avoid paying property taxes. At the time of the ANR plan's submission, Earl Johnson was a member of the Planning Board. He told Plaintiff "we don't like any change" and suggested that Plaintiff donate the parcel to the town to avoid paying property taxes. After leaving the meeting without success in getting the ANR plan endorsed, Plaintiff was told by a former selectman that Earl Johnson would try to obtain the parcel for himself if it was donated to the town, something he allegedly had done before. The former selectman relayed other past problems relating to town-owned properties. Plaintiff was "dumbfounded" and in response established a blog to inform the community about the acts of Town officials and employees. The blog was critical of Town officials generally and of the Johnson family in particular. It was read by the community, at one point receiving more than 650 visits per day, as well as comments. The blog generated ill will in some of the Town officials, including Defendants, towards Plaintiff. Additionally, Plaintiff has filed a number of lawsuits against the Town and its employees and appealed various Town administrative decisions.

In 2011, an incident occurred involving Plaintiff and Earl Johnson's son, Brian Johnson

("Johnson"), a Town Highway Surveyor. Johnson was participating in an ice-fishing derby on Hamilton Reservoir, where Plaintiff's home is located. An altercation occurred between the two, and Plaintiff secretly audio-recorded it. Johnson filed a private lawsuit against Plaintiff in state court for illegal wiretapping based on Plaintiff's recording. Defendant Sapirstein, who was Special Town Counsel, represented Johnson in his private civil lawsuit. Plaintiff counterclaimed alleging assault, assault and battery, defamation, libel and slander, intentional and negligent infliction of emotional distress, abuse of process, obstruction of justice, and civil rights violations. In 2013, a jury found for Johnson on his claim that Plaintiff had illegally recorded him in violation of the state wiretapping statute. The jury also found for Plaintiff on his civil rights and defamation claims against Johnson. The appeals court subsequently affirmed judgment against Plaintiff but found the trial court's dismissal of Plaintiff's abuse of process claim against Johnson to have been in error and remanded.

About a month after the trial, on March 20, 2013, selectman Michael Kennedy met with Plaintiff and "confided in [Plaintiff] that he was misled to believe that it was legal and the right thing to do and to secretly pay for Johnson's civil suit with taxpayers money." (Am. Compl. ¶ 44, Dkt. No. 24.) Kennedy "did not mention or even allude" in that meeting "the fact that [they] initiated and paid for Johnson's civil suit to 'discourage' and 'deter' Frei from exercising the right to petition the Government for redress of grievances." (Id. ¶ 46).

Several years later, on November 30, 2015, the State Ethics Commission released a Public Education Letter ("PEL") finding that Defendants Arnold, Wettlaufer, and Petersen, as well as Kennedy and Johnson, had violated conflict of interest law under Massachusetts General Laws, chapter 268A, by authorizing or soliciting the expenditure of $23,023 of Town funds to pay Defendant Sapirstein for representing Johnson. (PEL, Dkt. No. 24-1.) The Commission found that Johnson had asked Wettlaufer, then Chair of the Town Board, what the Town could do to prevent Frei from "harassing" Johnson, noting that he had a viable claim against Frei for secretly recording

their altercation. After conferring with the other selectmen, Wettlaufer told Johnson the Town would pay Johnson's legal fees to pursue his civil claim against Frei, based on the belief that such action could discourage Frei from continuing litigation against the Town and its officials. At different times during the period of Johnson's lawsuit from 2011 to 2013, Arnold, Wettlaufer, Kennedy, and Petersen authorized the use of Town funds to pay Sapirstein for her representation of Johnson. The Commission concluded there was no legal basis for that authorization. It noted that deterring future lawsuits against the Town was not a legitimate justification for the expenditure of Town funds for a private civil lawsuit. The Commission decided not to authorize adjudicatory proceedings, however, because the Town had been reimbursed in full and "there [was] a question as to whether [Arnold, Wettlaufer, Kennedy, Petersen, and Johnson] relied on advice of counsel." (PEL 1, Dkt. No. 24-1.)

Additionally, with respect to Defendant Sapirstein, Plaintiff alleges she "solicited and accepted [the] illegal payments" authorized by Wettlaufer, Petersen, and Arnold. (Am. Compl. ¶ 97, Dkt. No. 24); she "lied to two judges of the District Court, and three judges of the Appellate Division of the District Court, to keep her frivolous lawsuit alive" (*id.* ¶ 101); "well knew that she did not have a case and lied to the Palmer District Court, the Appellate Division of the District Court by making up her own case law to prevent her case from being dismissed" (*id.* ¶ 106); and essentially "misl[ed]," "manipulate[d]," and "duped a total of eight judges" (*id.* ¶¶ 107–10) with her arguments on caselaw. Plaintiff also alleges that Sapirstein made the Johnson lawsuit "as expensive and complicated as possible." (*Id.* ¶ 120.)

Frei filed the present suit on November 23, 2018.

### III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is "inappropriate if the

complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plaint statement of the claim showing that the pleader is entitled to relief.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). "A 'short and plain' statement needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 12 (alteration in original) (quoting *Twombly*, 550 U.S. at 555). But "to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Twombly*, 550 U.S. at 555). When assessing whether a complaint makes a sufficient showing, the court accepts as true Plaintiff's factual allegations contained in the complaint—those setting out who did or said what, to whom, and when—and draws all reasonable inferences in Plaintiff's favor. *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 36 (1st Cir. 2013). Exhibits attached to the complaint are properly considered part of the pleading. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008).

## IV. DISCUSSION

**A.   Section 1983 Claims for Deprivation of Rights Under the First Amendment and Fourteenth Amendment (Counts I, III, and IV)**

### 1.   Legal Standard for Statute of Limitations

The plaintiff's claims in this case are serious and would have been allowed to be litigated were they timely asserted. Unfortunately, as the plaintiff's own complaint acknowledges, the statute of limitations presents a barrier to proceeding. Although plaintiff attempts his best to get around the statute of limitations, and his argument that accrual occurred only with the publication of the PEL is tempting, ultimately, the court must find that plaintiff's claims are time-barred.

As the Supreme Court has said:

Statutes of limitations, which 'are found and approved in all systems of enlightened jurisprudence,' . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the

right to be free of stale claims in time comes to prevail over the right to prosecute them.'

*United States v. Kubrick*, 444 U.S. 111, 117 (1979) (quoting *Wood v. Carpenter*, 101 U.S. 135, 139 (1879) and *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944)).

> These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*Kubrick*, 444 U.S. at 117; *see also Tagliente v. Himmer*, 949 F.2d 1, 4 (1st Cir. 1991) (quoting *Kubrick*); *Albert v. Maine Cent. R.R. Co.*, 905 F.2d 541, 543 (1st Cir. 1990) (same); *Marrapese v. State of R.I.*, 749 F.2d 934, 942 (1st Cir. 1984) (same). "[T]heir operation does not discriminate between the just and the unjust claim . . . . They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate." *Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) (internal footnote omitted). "While the rule may seem harsh, statutes of limitations represent public policy decisions by state legislatures that balance several competing interests." *Novak v. Mentor Worldwide LLC*, 287 F. Supp. 3d 85, 90 (D. Me. 2018); *see also Skwira v. United States*, 344 F.3d 64, 82 (1st Cir. 2003) (affirming dismissal after noting that the "district court was faced in this case with the unenviable task of telling five families that, despite the tragic deaths of their loved ones at the hands of a government employee, their claims . . . were time-barred").

The statute of limitations period for section 1983 claims is borrowed from the state's limitation period governing personal injury causes of action. *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001); *Álamo-Hornedo v. Puig*, 745 F.3d 578, 580 (1st Cir. 2014) (citing *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 123 n.5 (2005)). In Massachusetts, the period is three years. *Nieves*, 241 F.3d at 51 (citing Mass. Gen. Laws ch. 260, § 2A).

The important question here, however, is when the statute of limitations period first accrued, which is determined by federal law. *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007). Under

6

federal law, a section 1983 claim accrues "when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Id.* (quoting *Carreras-Rosa v. Alves-Cruz*, 127 F.3d 172, 174 (1st Cir. 1997)). Normally, a section 1983 claim accrues at the time of the injury. *Jardin De Las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 133 (1st Cir. 2014) (citing *Randall v. Laconia*, 679 F.3d 1, 6 (1st Cir. 2012)).

A claim accrues even if the plaintiff does not know the injurious action is discriminatory or wrongful. For example, in *Marrero-Gutierrez*, the First Circuit rejected the plaintiff's argument that "the date of [the] injury ought be tolled until he learned of the discriminatory animus that made his demotion wrongful." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5–6 (1st Cir. 2007). It held, instead, that a "claimant is deemed to 'know' or 'learn' of a discriminatory act at the time of the act itself and not at the point that the harmful consequences are felt." *Id.*; *see also Morris v. Government Dev. Bank of P.R.*, 27 F.3d 746, 749–50 (1st Cir. 1994) (rejecting the proposition that plaintiff's "cause of action existed in what amounts to a state of suspended animation until he became aware of the racial and political motives behind the adverse employment decision"). The First Circuit similarly held in the takings context that a claim was time-barred though the plaintiff did not discover the government took its land under false pretenses until it initiated an investigation twenty-eight years later. *Vistamar, Inc. v. Fagundo-Fagundo*, 430 F.3d 66, 70–71 (1st Cir. 2005). It "rejected plaintiff's suggestion that the actual injury occurred only upon discovery of animus" or "wrongful[ness]" of "defendants' true intentions." *Id.* Likewise, in the context of medical malpractice, the First Circuit has held that the "plaintiff need not know . . . that [the injury] was negligently inflicted" for the limitations period to run. *Gonzalez v. United States*, 284 F.3d 281, 289 (1st Cir. 2002); *see also Kubrick*, 444 U.S. at 122–23 ("We thus cannot hold that Congress intended that 'accrual' of a claim must await awareness by the

plaintiff that his injury was negligently inflicted.").[1] In other words, the "knowledge of an injury necessary to begin the statute of limitations running in a § 1983 claim 'is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred.'" *Tomaselli v. Beaulieu*, 967 F. Supp. 2d 423, 441 (D. Mass. 2013) (quoting *Tedeschi v. Reardon*, 5 F. Supp. 2d 40, 44 (D. Mass. 1998)); *see also Rakes v. United States*, 442 F.3d 7, 20 n.8 (1st Cir. 2006) ("[A] claim can accrue before the plaintiff knows that the injury was the result of [wrongful conduct].").

The discovery rule may delay accrual when certain facts necessary to bring a claim are unknown. *Jardin*, 766 F.3d at 133. The discovery rule "is meant to aid plaintiffs who, for reasons beyond their control, could not have promptly discovered the facts that form the foundation of their claims." *Id.* at 134. "Typically, the discovery rule comes into play either when the injury has lain dormant without manifestation"—such as some medical conditions[2]—or when "the facts about causation [are] in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain"—such as the government's causal connection to the injury.[3] *Jardin*, 766 F.3d at

---

[1] The claims in *Gonzalez* and *Kubrick* were brought pursuant to the Federal Tort Claims Act ("FTCA") and not section 1983. Nevertheless, the cases are instructive. In *Marrapese*, a section 1983 case, the First Circuit noted: "We rely on cases dealing with the timing of accrual of a claim under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), for guidance. Although we recognize that different considerations may apply in section 1983 actions and in FTCA suits, the problems courts encounter in resolving the accrual question under federal law are basically the same. The parties have used FTCA cases to make their arguments and many cases under one federal act have relied on cases under other federal acts for resolution of accrual questions." *Marrapese*, 749 F.2d at 938 n.8.

[2] For example, "[i]n [*Urie*], the Court held that a claim under the Federal Employers' Liability Act ("FELA") did not accrue until the plaintiff's injury became manifest. Urie had contracted silicosis from working as a fireman on a steam locomotive, but his condition was not diagnosed until he became too ill to work. The Court, reluctant to charge Urie with the 'unknown and inherently unknowable,' held that Urie's 'blameless ignorance' of the fact of his injury operated to delay accrual under the FELA until his disease manifested itself." *Marrapese*, 749 F.2d at 942–43.

[3] For example, the First Circuit found the discovery rule applied in *Attallah* because the plaintiffs could not have discovered that government employees were involved in the abduction and murder of plaintiffs' courier (and that they therefore had a claim against the government under FTCA), until after the investigation and criminal indictment against the government employees many years later.

133 (alteration in original) (quoting *Kubrick*, 444 U.S. at 122). Under the discovery rule, "where the injury and its cause are not immediately apparent," *Attallah*, 955 F.2d at 780, "a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the factual basis for the cause of action." *McIntyre v. U.S.*, 367 F.3d 38, 52 (1st Cir. 2004) (quoting *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002)). The standard is an objective one, so that accrual is triggered by "the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to inquire and seek advice preliminary to deciding if there is a basis" for filing a claim. *Callahan v. United States*, 426 F.3d 444, 451 (1st Cir. 2005) (quoting *Skwira*, 344 F.3d at 78).[4] The plaintiff is "charged with knowledge of facts which 'in the exercise of reasonable diligence [she] should have discovered.'" *Id.* (alteration in original) (quoting *Gonzalez*, 284 F.3d at 288). Therefore, "something less than definitive knowledge is required" for accrual. *Id.* The "duty of investigation under the discovery rule is not a negligible one." *Marrapese*, 749 F.2d at 943. And the duty to investigate includes seeking advice in the legal community once the plaintiff is on notice of a possible harm. *See Kubrick*, 444 U.S. at 123;[5] *Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 14–

---

*Attallah v. U.S.*, 955 F.2d 776, 779–80 (1st Cir. 1992); *see also Skwira*, 344 F.3d at 77 ("Outside the medical malpractice context, however, the identity of the individual(s) responsible for an injury may be less evident, and a plaintiff may have less reason to suspect governmental involvement. Not surprisingly, courts of appeals have been slightly more forgiving in these cases, deferring the accrual of claims until a reasonably diligent plaintiff has reason to suspect a governmental connection with the injury.").

[4] Again, as with the accrual standard, "in applying a discovery accrual rule, [the Supreme Court has] been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000).

[5] The Supreme Court rejected the lower court's holding that the limitations period was not triggered until the plaintiff knew his treatment was negligent. "We are unconvinced that for statute of limitation purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. . . . [We] cannot hold that Congress intended that 'accrual' of a claim must await awareness by the plaintiff that his injury was negligently inflicted. A plaintiff . . . , armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute . . . ." 444 U.S. at 122–23.

15 (1st Cir. 2005) ("[S]he had a duty to investigate and is charged with knowledge that consulting with a competent lawyer would have brought forth."). "Further, the limitations period begins to run regardless of whether plaintiffs make inquiries, and regardless of whether they are correctly advised." *Gonzalez*, 284 F.3d at 289.[6]

Although, generally, what the plaintiff knew or should have known is a factual question, the court can decide the statute of limitations question on a motion to dismiss "so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rosbeck v. Corin Grp., PLC*, 140 F. Supp. 3d 197, 211 (D. Mass. 2015) (quoting *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004)); *see also College Hill Props., LLC v. City of Worcester*, 135 F. Supp. 3d 10, 13 (1st Cir. 2015); *Arturet-Vélez*, 429 F.3d at 13.

### 2. Section 1983 Claims Are Untimely

The injury Plaintiff complains of is Town officials using Town funds to finance Johnson's private lawsuit against Plaintiff. Plaintiff alleges that Town funds were used by the Town to retaliate against Plaintiff for exercising his First Amendment rights (Count I), and that doing so constituted abuse of process (Count III)[7] and deprivation of equal protection under the law (Count IV). Plaintiff argues that he was put on notice of the injury on November 30, 2015, the publication date of the

---

[6] A "plaintiff's failure to marshal support despite diligence may mean . . . that he has received poor medical, scientific, or legal advice. That result is unfortunate but is also no reason why the statute should not run; the same pitfall faces all plaintiffs, not just those whose causes of action are inherently difficult to discover. Certainly a litigant should not be discouraged from seeking additional professional opinion before rushing into court. But the claimant has the statutory period in which to do so." *Fidler v. Eastman Kodak Co.*, 714 F.2d 192, 200 (1st Cir. 1983). "An accrual date that turns on when a plaintiff (or his lawyers) finally decides to take action, rather than when the plaintiff was sufficiently alerted to the appropriateness of seeking legal advice, would render the limitations period meaningless." *Ouellette v. Gaudette*, No. 2:16-cv-00053-LEW, 2019 WL 4467633, at *4 n.4 (D. Me. Sept. 18, 2019) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 141–42 (2d Cir. 2011)).

[7] *See also infra* Section A.4 (discussing abuse of process as the basis for a section 1983 claim).

PEL. However, as Plaintiff's own complaint acknowledges, Plaintiff was told about the use of Town funds to finance Johnson's private lawsuit by selectman Kennedy, one of the Town officials involved in the decision, on March 20, 2013. (Am. Compl. ¶¶ 43–46.) Kennedy even flagged to Plaintiff the issues of secrecy and illegality with respect to this use of Town funds. (*Id.* ¶ 44.) The statute of limitations started to accrue by at least this date.

Plaintiff's proposition that his claims accrued only when he learned or could have learned about Defendant's motive, through the PEL letter, has been rejected by the First Circuit. *See Marrero-Gutierrez*, 491 F.3d at 5–6; *Morris*, 27 F.3d at 749–50; *Vistamar*, 430 F.3d at 70–71; *Gonzalez*, 284 F.3d at 289. Normally, accrual would begin at the time of the injury, which in this case is the filing and funding of the lawsuit. Because Plaintiff had no reason to know of the Town and officials' secret involvement in Johnson's private lawsuit against him, the discovery rule tolled accrual to a time when Plaintiff learned of the Defendants' causal connection to the Johnson lawsuit. But once Kennedy confessed to Plaintiff about being "misle[d] to believe that it was  legal and the right thing to do and to secretly pay for Johnson's civil suit with taxpayers money" (Am. Compl. ¶ 44), Plaintiff possessed sufficient facts about the injury and its cause to prompt a reasonable person to investigate and seek legal advice. It does not help Plaintiff that "Kennedy did not mention or even allude to the fact that the defendants initiated and paid for Johnson's civil suit to 'discourage' and 'deter' Frei from exercising the right to petition the Government for redress of grievances" (Am. Compl. ¶ 46). Kennedy's silence does not excuse Plaintiff from exercising reasonable diligence in investigating the reasons for Defendants' actions and asserting his claims, including consulting with a lawyer about the possible legal claims. In fact, by the time Kennedy revealed the Town's and officials' involvement, Plaintiff had already asserted an abuse of process claim against Johnson in the Johnson litigation. Plaintiff therefore was familiar with the injurious nature and possibly wrongful reason for the Johnson lawsuit. The only missing information was who caused that injury, which Kennedy

filled in for him on March 20, 2013, more than three years before the filing of the complaint in this action. Plaintiff's section 1983 claims are therefore time-barred.

### 3. Failure to State a Claim for Section 1983 Claim Based on First Amendment Retaliation (Count I)

The statute of limitations bars Plaintiff's claim on Count I but, for completeness, the court briefly addresses Defendants' substantive arguments that Plaintiff has failed to state a claim for First Amendment retaliation (Count I). Defendant Sapirstein relies on a but-for standard used in the prison context. (Sapirstein Mem. 8, Dkt. No. 30 (citing *Price v. Wall*, 464 F. Supp. 2d 90 (D.R.I. 2006)).) "The First Circuit . . . has held that [the] standard is more defendant-friendly in the prison context, as '[p]laintiff must prove that he would not have been transferred 'but for' the alleged reason.'" *Shaheed-Muhammad v. Dipaolo*, 393 F. Supp. 2d 80, 105 (D. Mass. 2005) (second alteration in original) (quoting *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979)). Otherwise, the standard is the plaintiff "must show that her conduct 'was constitutionally protected, and that this conduct was 'a substantial factor [or] . . . a motivating factor' driving the allegedly retaliatory decision.'" *Gorelik v. Costin*, 605 F.3d 118, 123 (1st Cir. 2010) (alteration in original) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 10 (1st Cir. 2005)). Accordingly, Defendant Sapirstein's point that there was a permissible reason for the Johnson lawsuit, supported by a jury verdict in Johnson's favor, and so retaliation was not a "but-for" reason for the lawsuit, does not support dismissal for a failure to state a claim.

Nor is the court persuaded by Defendant Sapirstein's and the other Defendants' arguments that Plaintiff has failed to sufficiently plead First Amendment activity, deterrence, and harm. (Sapirstein Mem. 9, Dkt. No. 30; Holland Mem. 6, Dkt. No. 32.) Plaintiff's pleading includes details about his outspoken speech against Town officials through his blog, the conflict and animosity between Plaintiff and Town officials, the Town's funding of the Johnson litigation, and the fact that Plaintiff feels he "can not afford to publish anything on his blog any-longer as there is no reliable

judiciary able/willing to effectively protect the first Amendment and other rights" (Am. Compl. ¶ 61, Dkt. No. 24). When viewed in the light most favorable to Plaintiff, these allegations show a chilling effect arising out of the Johnson litigation.

### 4. Failure to State a Claim for Section 1983 Claim Based on Abuse of Process (Count III)

Likewise, the statute of limitations bars Plaintiff's claim on Count III, but the court briefly addresses the arguments on the merits for completeness.[8] First, it is questionable whether section 1983 liability can be predicated on a civil abuse of process claim. Defendants do not raise this issue and instead focus their discussion of Count III on the elements of abuse of process as a stand-alone state claim, which are (1) process being used, (2) for an ulterior or illegitimate purpose, (3) resulting in damage. (Sapirstein Mem. 10–11, Dkt. No. 30; Holland Mem. 5, 6–7, Dkt. No. 32); *Millennium Equity Holdings, LLC v. Mahlowitz*, 925 N.E.2d 513, 522 (Mass. 2010). But to "sustain an action under 42 U.S.C. § 1983, [the plaintiff] must show both: (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Collins v. Nuzzo*, 244 F.3d 246, 250 (1st Cir. 2001) (internal quotation marks omitted). It is not clear that the abuse of process alleged here, in the context of a civil litigation, could amount to a constitutional deprivation. *See, e.g.*, *Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir. 1994) (discussing *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)). The court will not dwell further on the issue, however, since Count III should be dismissed under the statute of limitations.

Next, the court is not persuaded by Defendants' arguments that Plaintiff has failed to show

---

[8] The court declines to decide the discretionary *Colorado River* doctrine issue raised by Defendant Sapirstein since it is dismissing the abuse of process claim on other grounds. *Elmendorf Grafica, Inc. v. D.S. Am. (E.), Inc.*, 48 F.3d 46, 50 (1st Cir. 1995) ("The decision whether to surrender jurisdiction is 'necessarily left to the discretion of the district court . . . ' and 'reversed only for an abuse of that discretion.'").

he has been harmed. (Sapirstein Mem. 11, Dkt. No. 30; Holland Mem. 7, Dkt. No. 32.) Defendants argue that Plaintiff has not been deterred from filing petitions with the court, pointing to the fact he filed the present lawsuit. But as already discussed, Plaintiff has alleged he has been deterred from criticizing the Town and its officials on his blog as well as economic damages resulting from having to litigate the Johnson lawsuit.

The court also is not persuaded by Defendant Sapirstein's argument that she is absolutely protected by the litigation privilege. "Under Massachusetts law, an attorney's statements are absolutely privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.'" *Giardiello v. Marcus, Errico, Emmer & Brooks, P.C.*, 261 F. Supp. 3d 86, 99 (D. Mass. 2017) (quoting *Blanchette v. Cataldo*, 734 F.2d 869, 877 (1st Cir. 1984); *Sriberg v. Raymond*, 345 N.E.2d 882, 884 (Mass. 1976)). "The privilege applies as a general bar to all civil liability *based upon an attorney's statements*, and it applies even if the offensive statements were uttered maliciously or in bad faith." *Giardiello*, 261 F. Supp. 3d at 99 (emphasis added). Therefore, the court agrees that Sapirstein cannot be held liable for "lying" and "making up her own case law" as Plaintiff alleges.

But *conduct*, such as an alleged abuse of process, is not necessarily covered by the litigation privilege. *See Gillette Co. v. Provost*, 74 N.E.3d 275, 283 (Mass. App. Ct. 2017) ("In the judge's view, [counterclaimant] was complaining 'not about defamatory remarks' but 'more about abuse of process—a claim plainly not subject to dismissal on the grounds of any privilege.' This distinction between speech and conduct . . . is a sound one."). Although Johnson's litigation was meritorious, if the underlying facts for bringing the lawsuit show an abuse of process, they would constitute conduct which would not be protected by privilege. *See 477 Harrison Ave., LLC v. JACE Boston, LLC*, 134 N.E.3d 91, 104 (Mass. 2019) ("Thus, an abuse of process counterclaim may be brought

even where the plaintiff has a meritorious claim. It is, indeed, 'immaterial that the process was

properly issued, that it was obtained in the course of proceedings which were brought with probable

cause and for a proper purpose or even that the proceedings terminated in favor of the person

instituting or initiating them.'" (quoting *Gutierrez v. MBTA*, 772 N.E.2d 552, 563 (Mass. 2002))).

Nevertheless, whether the complaint alleges sufficient facts to support an abuse of process

claim specifically as to Defendant Sapirstein is a close question. Sapirstein was the Special Town

Counsel, and she accepted payments from the Town even though it was for a private citizen's

litigation. These facts might support the inference, at the motion to dismiss stage, that she was

actively involved with the other Defendants in deciding to litigate Johnson's claim to discourage

Frei's activities and speech against the Town and its officials. There are no other alleged facts,

however, that would connect Sapirstein with the other Defendants' conduct and motive, and the

Johnson claim she litigated was not groundless. Since Count III should be dismissed due to the

statute of limitations, the court does not need to resolve the close question of whether Plaintiff has

sufficiently pled this claim as to Sapirstein.

Regarding the Town, under the Massachusetts Tort Claims Act, it cannot be liable for claims

arising out of an intentional tort such as abuse of process. Mass. Gen. Laws ch. 258, § 10(c); *Arias v.

City of Everett*, No. 19-cv-10537-JGD, 2019 WL 6528894, at *15 (D. Mass. Dec. 4, 2019). Therefore,

in addition to being untimely, Count III as to the Defendant Town is dismissed for failure to state a

claim.

5. **Failure to State a Claim for Section 1983 Claim Based on Equal Protection (Count IV)**

The court finds that, in addition to being barred by the statute of limitations, Plaintiff has

failed to state a claim for violation of equal protection under section 1983. Under the equal

protection guarantee of the Fourteenth Amendment, all persons similarly situated should be treated

alike with respect to governmental action. *Pagán v. Calderón*, 448 F.3d 16, 34 (1st Cir. 2006).

However, an equal protection claim that is merely a restatement of a First Amendment claim is improper. *See id.* at 36–37 (citing *Rosenfeld v. Egy*, 346 F.3d 11, 15 (1st Cir. 2003); *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992); *Ruiz-Casillas v. Camacho-Morales*, 415 F.3d 127, 134 (1st Cir. 2005)); *Uphoff Figueroa v. Alejandro*, 597 F.3d 423, 430 n.8 (1st Cir. 2010). Although his complaint is unclear (Am. Compl. ¶¶ 123–25), one interpretation of Plaintiff's equal protection claim is that it is grounded in his having "exercised his first amendment rights and [being] a member of the class of individuals who exercises this right and is therefore a member of a protected class." (Am. Compl. ¶¶ 131). If so, the First Circuit has made clear that such a claim should be considered under the First Amendment and not the Fourteenth Amendment.

To the extent Plaintiff's claim is based on his being "a member of the protected class of individuals with a different national origin" (Am. Compl. ¶ 56), the complaint still fails to sufficiently support an equal protection claim. Plaintiff does not allege any facts that suggest he was subjected to unequal treatment based on his national origin.

The court agrees with Defendant Sapirstein that the claim also fails if interpreted to be based on a "class of one." To "establish a plausible equal protection claim, a plaintiff not relying on typically impermissible bases for classification (e.g., race, religion, etc.) must show that it was 'intentionally treated differently from others similarly situation, that no rational basis exist[ed] for that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure.'" *Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 10 (1st Cir. 2013) (alteration in original) (quoting *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006)). The plaintiff "must first identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently." *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (emphases in original) (quoting *Buchanan*, 469 F.3d at 178). "Plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Id.* (quoting *Clubside, Inc. v. Valentin*,

468 F.3d 144, 159 (2d Cir. 2006)). "[T]here must be sufficient proof on the relevant aspects of the

comparison to warrant a reasonable inference of substantial similarity," although "the degree of

similarity required may be relaxed somewhat if the plaintiff has presented evidence of 'personal

malice and "bad faith" retaliation.'" *Id.* at 251 & n.4 (quoting *Tapalian v. Tusino*, 377 F.3d 1, 7 (1st

Cir. 2004)). Plaintiff has not pled facts with respect to Defendants' treatment of any other individual

similarly situated to him. As such, he has failed to support a claim for equal protection based on

being a class of one.

### B.      Section 1985 Claim for Conspiracy to Interfere with Civil Rights (Count V)

A cause of action under section 1985 exists when there are two or more persons who

conspire for the purpose of depriving, directly or indirectly, any person or class of persons of the

equal protection of the laws or of equal privileges and immunities under the law. *D.B. ex rel. Elizabeth

B. v. Esposito*, 675 F.3d 26, 44 (1st Cir. 2012). Like section 1983, section 1985 borrows from the

state's three-year statute of limitations for personal injury claims. *Rodríguez-García v. Municipality of

Caguas*, 354 F.3d 91, 96 (1st Cir. 2004). For accrual, "[i]n determining when the plaintiff knew, or

should have known, courts look to the common law cause of action most closely analogous to the

constitution right at stake." *Nieves v. McSweeney*, 73 F. Supp. 2d 98, 102 (D. Mass. 1999), *aff'd*, 241

F.3d 46 (1st Cir. 2001); *see also id.* at 102 n.4 ("The Court's analysis of the statute of limitations under

plaintiffs' section 1983 claims applies equally to plaintiffs' section 1985 claims."). "Injury and

damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a

conspiracy.'" *Id.* (quoting *Kadar Corp. v. Milbury*, 549 F.2d 230, 235 (1st Cir. 1977)).

Here, the alleged overt acts underlying Plaintiff's claims against the Town, Wettlaufer,

Petersen, and Arnold are the use of Town funds to pay for Sapirstein's fees in Johnson's litigation.

These payments occurred between 2011 and 2013, which Plaintiff was aware of or should have been

aware of by March 20, 2013. Therefore, Plaintiff's section 1985 claims filed in 2018 are barred by the

statute of limitations. For the same reason, Plaintiff's claims against Defendant Sapirstein based on her purported solicitation and acceptance of Town funds from the other Defendants are barred.

### C.     Qualified Immunity

Wettlaufer, Petersen, and Arnold, as well as Sapirstein in one of her alternative arguments that she is a town official,[9] argue that the claims against them are barred by qualified immunity. "Qualified immunity 'provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. § 1983 for infringing the constitutional rights of private parties.'" *Borges Colón v. Román-Abreu*, 438 F.3d 1, 18 (1st Cir. 2006) (quoting *Whitfield v. Meléndez-Rivera*, 431 F.3d 1, 6 (1st Cir. 2005)). The three-part test is to ask (1) whether the facts, taken in the light most favorable to the plaintiff, show the official's conduct violated a constitutional right, (2) whether that constitutional right was clearly established at the time of the violation, and (3) whether a reasonable officer, similarly situated, would understand that the challenged conduct violated the clearly established right at issue. *Id.* at 18–19.

Defendants' arguments center on the assertion that Wettlaufer, Petersen, and Arnold relied on advice of counsel in allocating Town funds to pay for Sapirstein's fees for the Johnson litigation. Therefore, they argue, a reasonable official would not have understood the challenged conduct of paying for the Johnson litigation to be a violation of Plaintiff's First Amendment rights. But the PEL, which Defendants cite and is included with the complaint, states only that "there is a question as to whether you relied on advice of counsel," which is not enough to entitle Defendants to a dismissal of the claims. (PEL, Dkt. No. 24-1; Sapirstein Mem. 19, Dkt. No. 30; Holland Mem. 7,

---

[9] Sapirstein's other alternative argument, that she was not a public employee in her role as Special Town Counsel, when she was litigating Johnson's private suit (Sapirstein Mem. 17, Dkt. No. 30), is a fact-intensive question that cannot be resolved at the motion to dismiss stage, where all factual allegations are taken as true and reasonable inferences are made in Plaintiff's favor. Therefore, the court rejects the argument that the complaint does not allege facts showing she acted under the color of law for the purpose of the section 1983 claims.

Dkt. No. 32); *Sueiro Vázquez v. Torregrosa de la Rosa*, 494 F.3d 227, 235 (1st Cir. 2007) ("Reliance on advice of counsel alone does not per se provide defendants with the shield of immunity"); *Borges Colón*, 438 F.3d at 19 (affirming the district court's denial of immunity despite the defendant asserting reliance on advice from counsel where a factual dispute existed for the jury).

### D. Issue and Claim Preclusion

Defendant Sapirstein argues that all counts against her should be dismissed as barred by issue preclusion (i.e., res judicata) and claim preclusion. (Sapirstein Reply 1–3, Dkt. No. 43.) "[I]ssue preclusion 'prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.'" *Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634 (Mass. 2005) (quoting *Heacock v. Heacock*, 520 N.E.2d 151, 152 (Mass. 1988)). A party is precluded from relitigating an issue if "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication.'" *Id.* Without spending too much time on this argument since Plaintiff's claims are being dismissed on other grounds, the court does not find issue preclusion applies at the very least because the issues are not identical. The issues in this case relate to Sapirstein's allegedly wrongful conduct, whereas the issues litigated in the Johnson litigation related to Johnson's and Plaintiff's allegedly wrongful conduct.

"Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in that action." *Id.* (quoting *O'Neill v. City Manager of Cambridge*, 700 N.E.2d 530, 532 (Mass. 1998)). Claim preclusion applies if there is "(1) identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *Id.* (quoting *DaLuz v. Dep't of Correction*, 746 N.E.2d 501, 505 (Mass. 2001)). Sapirstein argues that she was sufficiently in privity as

counsel to Johnson and "shared a commonality of interest with her client with respect to the presentation of Johnson's case." (Sapirstein Reply 2, Dkt. No. 43.) While Sapirstein had a duty to litigate Johnson's lawsuit in his interest, this does not equate to privity for purposes of claim preclusion under which "the litigant in the second suit steps in the shoes of the earlier litigant completely" so that "[r]ecovery or loss on the claim by one is recovery or loss by the privy." *Mongeau v. Boutelle*, 407 N.E.2d 352, 357 n.5 (Mass. App. 1980) (internal quotation marks omitted). Loss or victory on a claim asserted against a client does not transfer to the same loss or victory on a similar but distinct claim asserted specifically against the attorney, despite the existence of an attorney-client relationship during litigation of the claim against the client. Therefore, claim preclusion does not apply to the claims against Sapirstein.

### E.     Civil Conspiracy Under State Law (Count II)

Having disposed of all federal claims, the court declines to exercise supplemental jurisdiction over the state law claim of civil conspiracy. *Ramos-Echevarria v. Pichis, Inc.*, 659 F.3d 182, 191 (1st Cir. 2011).

## V. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (Dkt. Nos. 29, 31) are GRANTED as to Counts I, III, IV, and V. The court declines to exercise supplemental jurisdiction over Count II, Plaintiff's remaining state-law claim, and therefore DISMISSES it without prejudice. This case may now be closed.

It is So Ordered.

   /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge